1  BITA RAHEBI (CA SBN 209351)
   BRahebi@mofo.com
2  ROSE S. LEE (CA SBN 294658)
   RoseLee@mofo.com
3  ZACH B. QUINLAN (CA SBN 348240)
   ZQuinlan@mofo.com
4  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
5  Los Angeles, California  90017-3543
   Telephone:  213.892.5200
6  Facsimile:   213.892.5454

7  RICHARD S.J. HUNG (CA SBN 197425)
   RHung@mofo.com
8  MORRISON & FOERSTER LLP
   425 Market Street
9  San Francisco, California  94105-2482
   Telephone:  415.268.7000
10 Facsimile:   415.268.7522

11 LILY YUE LI (CA SBN 287280)
   YLi@mofo.com
12 AARON D. BRAY (CA SBN 327771)
   ABray@mofo.com
13 W. STELLA MAO (CA SBN 335136)
   SMao@mofo.com
14 MORRISON & FOERSTER LLP
   755 Page Mill Road
15 Palo Alto, California  94304-1018
   Telephone:  650.813.5600
16 Facsimile:   650.494.0792

17 Attorneys for Defendant APPLE INC.

18                    UNITED STATES DISTRICT COURT

19                  NORTHERN DISTRICT OF CALIFORNIA

20

21 UUSI, LLC,                          Case No. 3:18-cv-04637-JD

22              Plaintiff,             **DEFENDANT APPLE INC.'S REPLY
                                       IN SUPPORT OF MOTION FOR
23        v.                           SUMMARY JUDGMENT**

24 APPLE INC.,                         Date:  October 2, 2025
                                       Time:  10:00 a.m.
25              Defendant.             Courtroom:  11
                                       Judge:  Hon. James Donato
26
                                       Action Filed:  November 22, 2017
27                                     Trial Date:  January 26, 2026

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  UUSI LACKS BOTH ARTICLE III AND STATUTORY STANDING........................... 1

A.   UUSI Lacks Article III Standing................................................................ 1

1.   UUSI's opposition confirms that issue preclusion applies. ...................... 1

2.   UUSI's opposition confirms UUSI has never owned the '183 patent. ................................................................................................ 3

a.   UUSI has abandoned its original theories and does not dispute its latest theories post-dated the fact discovery cut-off. ................................................................................................ 3

b.   UUSI does not hold Hourmand's interest. ..................................... 4

c.   UUSI does not hold Mr. Washeleski or Dr. Cooper's interests. ...................................................................................... 6

(i)   UUSI's third set of theories fails to show ownership. ........ 6

(ii)  UUSI's second set of theories fails to show ownership. ................................................................................. 8

B.   UUSI Lacks Statutory Standing ............................................................... 11

III. UUSI CANNOT PROVE WILLFUL OR INDIRECT INFRINGEMENT..................... 11

A.   No Material Facts Regarding Knowledge of the Patent Exist ............................. 11

B.   No Material Facts Regarding Knowledge of Infringement Exist ......................... 13

IV. CLAIMS 37-39 OF THE '183 PATENT ARE INVALID FOR INDEFINITENESS ............................................................................................. 14

A.   The Term of Degree "Closely Spaced" Is Indefinite ............................................. 14

B.   The Claims Are Indefinite Hybrid Apparatus/Method Claims............................. 15

V.   CONCLUSION .................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alzheimer's Institute of America Inc. v. Elan Pharmaceuticals, Inc.*,
5      No. 10-cv-482, 2012 WL 12920745 (N.D. Cal. Aug. 3, 2012) ................................................. 3

6 *Am. Title Ins. Co. v. Lacelaw Corp.*,
     861 F.2d 224 (9th Cir. 1988)..................................................................................................... 10
7

*Andrew Corp. v. Gabriel Elecs., Inc.*,
8      847 F.2d 819 (Fed. Cir. 1988)................................................................................................... 14

9 *Arbaugh v. Y&H Corp.*,
     546 U.S. 500 (2006) .................................................................................................................. 10
10

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
11      No. 12-cv-10763, 2015 WL 11201243 (C.D. Cal. Nov. 4, 2015) ............................................. 15

12
*CAO Lighting, Inc. v. Feit Electric Company, Inc*.,
13      No. 20-cv-4926, 2020 WL 7786580 (C.D. Cal. 2020) ................................................. 12, 13, 14

14 *CAO Lighting, Inc. v. Gen. Elec. Co.*,
     No. 20-cv-681, 2023 WL 387585 (D. Del. Jan. 25, 2023)........................................................ 12
15

*Laitram Corp. v. NEC Corp.*,
16      163 F.3d 1342 (Fed. Cir. 1998)................................................................................................. 14

17 *Chapman v. Pier 1 Imps. (U.S.) Inc.*,
     631 F.3d 939 ............................................................................................................................... 3
18

*County of Orange v. Air California*,
19      799 F.2d 535 (9th Cir. 1986)....................................................................................................... 2

20 *Dow Chem. Co. & Subsidiaries v. United States*,
     278 F. Supp. 2d 844 (E.D. Mich. 2003).................................................................................. 5, 6
21

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*,
22      879 F.3d 1332 (Fed. Cir. 2018)................................................................................................. 14

23 *Ferguson v. Neighborhood Housing Servs. of Cleveland, Inc.*,
     780 F.2d 549 (6th Cir. 1986)..................................................................................................... 10
24

*FilmTec Corp. v. Allied-Signal Inc.*,
25      939 F.2d 1568 (Fed. Cir. 1991)................................................................................................... 7

26 *Int'l Tel. & Tel. Corp. v. Gen. Telephone & Elecs. Corp.*,
     518 F.2d 913 (9th Cir. 1975)..................................................................................................... 10

27

28

*IPXL Holdings, L.,.L.C. v. Amazon.com*,
    430 F.3d 1377 (Fed Cir. 2005) ................................................................................. 1, 15

*Koss Corp. v. Bose Corp.*,
    107 F.4th 1363 (Fed. Cir. 2024) ...................................................................................... 1

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) ..................................................................................... 11

*Love v. Villacana*,
    73 F.4th 751 (9th Cir. 2023) ........................................................................................... 3

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
    672 F.3d 1350 (Fed. Cir. 2012) ..................................................................................... 12

*Mateo v. M/S KISO*,
    805 F. Supp. 761 (N.D. Cal. 1991) ............................................................................... 15

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012) ................................................................... 11, 12, 13

*Nature Simulation Sys. Inc. v. Autodesk, Inc.*,
    50 F.4th 1358 (Fed. Cir. 2022) ...................................................................................... 14

*Paulo v. Holder*,
    669 F.3d 911 (9th Cir. 2011) ........................................................................................... 2

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    No. 16-cv-06371-BLF, 2018 WL 5603631 (N.D. Cal. Oct. 26, 2018) ............................ 15

*Rosemount, Inc. v. Beckman Instruments, Inc.*,
    727 F.2d 1540 (Fed. Cir. 1984) ..................................................................................... 14

*Saghian v. Shemuelian*,
    835 F. App'x 351 (10th Cir. 2020) ................................................................................ 10

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) ..................................................................................... 11

*Sec. People, Inc. v. Medeco Sec. Locks, Inc.*,
    59 F. Supp. 2d 1040 (N.D. Cal. 1999) ............................................................................. 2

*Sentius Int'l, LLC v. Microsoft Corp.*,
    78 F. Supp. 3d 967 (N.D. Cal. 2015) ............................................................................ 12

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th. Cir. 2012) ........................................................................................ 1

*In re Smith Trust*,
    745 N.W.2d 754 (Mich. 2008) .................................................................................... 5, 9

*SPH Am., LLC v. Huawei Techs., Co.*,
No. 13-cv-2323, 2017 WL 1331920 (S.D. Cal. Apr. 10, 2017)...............................................11

*Stark v. Budwarker, Inc.*,
25 Mich. App. 305 (Mich. Ct. App. 1970)....................................................................5, 6

*Uniloc USA, Inc. v. Apple, Inc.*,
No. C 18-358, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) .................................................10

*UUSI, LLC v. Samsung Elecs. Co., Ltd. et al*,
No. 15-cv-146, 2025 WL 1099957 (W.D. Mich. March 14, 2025).................................1, 2, 3

*Valjakka v. Netflix, Inc.*,
710 F. Supp. 3d 782 (N.D. Cal. 2024) .................................................................................11

*Weston Instruments, Inc. v. Data Tech. Corp.*,
64 F.R.D. 100 (N.D. Cal. 1974).............................................................................................3

*Winbond Elecs. Corp. v. ITC*,
262 F.3d 1363 (Fed. Cir. 2001).............................................................................................7

*Windy City Innovations, LLC v. Facebook, Inc.*,
411 F. Supp. 3d 886 (N.D. Cal. 2019) ...................................................................................8

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
No. 17-cv-3848, 2018 WL 2585436 (N.D. Cal. May 8, 2018)..............................................2

**Statutes**

35 U.S.C. 307(b) ........................................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

UUSI's opposition confirms that the Court should grant Apple's summary judgment.

**Standing**.  UUSI does not dispute the three facts that compel issue preclusion, *i.e.*: (1) both *Samsung* and this case involve the identical issue of whether UUSI lacks standing to assert the '183 patent, (2) the Samsung court entered a final judgment against UUSI for lack of Article III standing, and (3) UUSI is the sole plaintiff in both actions.  Summary judgment that UUSI lacks standing thus is warranted based on preclusion alone.  Even if the Court were to reach the merits (which it need not), UUSI's shifting theories, contradictory arguments, and inadmissible, unreliable extrinsic evidence do not create a material factual dispute.  Its belated attempt to introduce newly executed assignments underscores its lack of standing all along.

**Indirect and willful infringement**.  To show alleged knowledge of the '183 patent, UUSI relies exclusively on communications from 2007—six years before the issuance of the reexamined '183 patent and before asserted claims 37-39 even existed.  UUSI's argument regarding Apple's alleged knowledge of infringement is similarly deficient, as the 2007 communications concerned unaccused products and unasserted claims of the original patent.  UUSI's attorney argument cannot create a material factual dispute.

**Indefiniteness**.  UUSI ignores that whether touch terminals are "closely spaced" lacks an objective standard in view of the intrinsic and extrinsic record.  UUSI also misapplies *IPXL* and fails to rebut that the hybrid apparatus and method claims are indefinite.

## II.     UUSI LACKS BOTH ARTICLE III AND STATUTORY STANDING

### A.     UUSI Lacks Article III Standing

#### 1.     UUSI's opposition confirms that issue preclusion applies.

UUSI's opposition confirms that issue preclusion compels summary judgment.  UUSI does not dispute that: (1) both *Samsung* and this case involve the identical issue of whether UUSI owned the '183 patent when suit was filed; (2) the *Samsung* court entered final judgment against UUSI for lack of Article III standing to assert the '183 patent; and (3) UUSI is the sole plaintiff in both actions.  (Opp. at 6-8; Mot. at 6-8.)  All three prongs of the issue preclusion test thus are met. *See Koss Corp. v. Bose Corp.*, 107 F.4th 1363, 1366 n.3 (Fed. Cir. 2024); *Skilstaf, Inc. v. CVS*

1  *Caremark Corp.*, 669 F.3d 1005, 1021 (9th. Cir. 2012) (issue preclusion test).  Unable to dispute

2  the facts, it raises three agreements that mischaracterize the law and the record.  Each fails.

3       First, UUSI cannot avoid preclusion by complaining that the *Samsung* court did not "fully

4  hear [its] position" or relied on an "incomplete record."  (Opp. at 7.)  The issue is whether UUSI

5  was "afforded ample opportunity to be fully heard on the issues."  *Sec. People, Inc. v. Medeco*

6  *Sec. Locks, Inc.*, 59 F. Supp. 2d 1040, 1045 (N.D. Cal. 1999), *aff'd*, 243 F.3d 555 (Fed. Cir.

7  2000).  It was.  The record indisputably shows that UUSI had ample opportunity to brief and

8  argue standing in *Samsung*.  UUSI cannot blame the *Samsung* court for denying its request to file

9  a sur-reply.  As the *Samsung* court noted, UUSI's sur-reply attempted to "raise new standing

10  arguments filed seven months after the motion to dismiss was fully briefed and a week after the

11  Court held a hearing on the motion."  (ECF No. 142-1 at 12, n.6.)  UUSI's failure to raise timely

12  arguments in *Samsung* cannot avoid issue preclusion.

13       Nor can UUSI fault the *Samsung* court for not considering "Dr. Cooper's employment

14  agreements with Nartron Corporation" and UUSI's "patent license agreement with Sanyo[.]"

15  (Opp. at 7.)  UUSI never raised these agreements when advancing its alleged standing in

16  *Samsung*.  These agreements appear nowhere in UUSI's opposition to Samsung's standing

17  motion or its proposed sur-reply.[1]  The *Samsung* court thus could not have considered them.

18  UUSI's last-ditch attempt to introduce these agreements now cannot defeat preclusion.  *See Paulo*

19  *v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) (one cannot avoid preclusion by "finding some

20  argument it failed to raise in the previous litigation"); *XpertUniverse, Inc. v. Cisco Sys., Inc*., No.

21  17-cv-3848, 2018 WL 2585436, at *4 (N.D. Cal. May 8, 2018) (one cannot escape preclusion "by

22  simply offering facts and arguments it could have presented in an earlier case but chose not to").

23       Second, UUSI's reliance on the consent judgment in the inventorship litigation against

24  Byron Hourmand is misplaced.  It is undisputed that the consent judgment was based on a

25  stipulation and did not involve any standing dispute, much less resolve it.  *See County of Orange*

26  *v. Air California*, 799 F.2d 535, 538-39 (9th Cir. 1986) ("There is no *stare decisis* effect to . . .

27

28  _____

[1] *See UUSI, LLC v. Samsung Elecs. Co., Ltd. et al*, No. 15-cv-146, 2025 WL 1099957 at *1, *5 n.6 (W.D. Mich. March 14, 2025) (citing *Samsung*, No. 15-cv-146, ECF Nos. 162, 213).

1  stipulated judgment made pursuant to negotiated settlement effecting only signing parties.");

2  *Weston Instruments, Inc. v. Data Tech. Corp.*, 64 F.R.D. 100, 102 (N.D. Cal. 1974) (consent

3  judgment stipulating validity could not be cited against third parties).

4      The pending *Samsung* appeal also has no bearing on the preclusive effect of the final

5  judgment.  *See Alzheimer's Institute of America Inc. v. Elan Pharmaceuticals, Inc.*, No. 10-cv-

6  482, 2012 WL 12920745, at *1-2 (N.D. Cal. Aug. 3, 2012) (dismissing claims based on collateral

7  estoppel as to plaintiff's lack of standing despite plaintiff's anticipated appeal of first case) (citing

8  *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882-83 (9th Cir. 2007) ("We have held that a final

9  judgment retains its collateral estoppel effect, if any, while pending appeal.")).

10     Finally, UUSI's argument that Apple "acquiesced" to jurisdiction because it petitioned for

11  IPRs and appealed the PTAB's decision is meritless.  UUSI does not point to any supportive

12  authority.  Its cited case is inapposite.  As the court in *Love v. Villacana* made clear: "The rule

13  established here is narrow:  if a federal action is dismissed for lack of Article III standing and a

14  plaintiff forgoes an appeal of that dismissal and refiles in state court, a defendant waives any

15  jurisdictional issue preclusion argument upon voluntary removal of the lawsuit back to federal

16  court."  73 F.4th 751, 756 (9th Cir. 2023).  That is not the case here.   Absent the exception in

17  *Love*, "[t]he existence of Article III standing is not subject to waiver."  *Chapman v. Pier 1 Imps.*

18  *(U.S.) Inc.*, 631 F.3d 939, 954 (citing *United States v. Hays*, 515 U.S. 737, 742 (1995)).

19          **2.      UUSI's opposition confirms UUSI has never owned the '183 patent.**

20              **a.      UUSI has abandoned its original theories and does not dispute**
21              **its latest theories post-dated the fact discovery cut-off.**

22     UUSI's ever-shifting theories continue to shift.  UUSI does not mention its first set of

23  theories in its opposition and thus has waived them.  (*See* Mot. at 9-10.)  It also has largely

24  abandoned its second set of theories (*id.* at 10-15), with the exception of the "Second Route" for

25  Mr. Washeleski and Dr. Cooper's interests (*id.* at 15-16).  UUSI instead doubles down on its third

26  set of theories—which it undisputedly raised for the first time over seven months after fact

27  discovery closed and more than five months after the hearing on Apple's motion to dismiss for

28  lack of standing (ECF No. 133).  (*See* Mot. at 16-17.)  UUSI further does not contest Apple's

1    authority that courts preclude such undisclosed new theories and unproduced evidence.  (*See* Mot.

2    at 16-17 (citing cases precluding new theories).)

3         Nor does UUSI dispute that its opposition theories contradict its previous positions.  For

4    example, UUSI's argument that Nartron Corp. transferred no assets to Norman Rautiola on

5    December 12, 2018 contradicts its prior claim that Nartron Corp. transferred "all of its remaining

6    assets" to him that day.  (*See* Mot. at 4-5, 17; *see also* Opp. at 11.)  Likewise, its assertion that

7    John Washeleski's and Stephen Cooper's interests did not vest until the certificate of inventorship

8    correction issued contradicts its prior position that both interests vested when the patent issued.

9    (*See* Mot. at 19; *see also* Opp. at 12-13.)  The Court should disregard UUSI's latest theories.

           **b.    UUSI does not hold Hourmand's interest.**

10

11        Even if the Court were inclined to consider those new theories, they still fail.  UUSI's

12   opposition does not dispute that: (1) on January 31, 1996, Mr. Hourmand assigned his interest in

13   the '183 patent to Nartron Corp.; and (2) on October 30, 2008, Nartron Corp. assigned its entire

14   interest in the '183 patent to Mr. Rautiola.  (*See* Opp. at 3-4; Mot. at 9.)  UUSI challenges only

15   the two December 12, 2008 agreements, arguing that: (1) the first December 12, 2008 agreement

16   transferred "no assets" from Nartron Corp. to Mr. Rautiola; and (2) the second December 12,

17   2008 agreement transferred "all" the Nartron Corp. assets held by Mr. Rautiola to UUSI,

18   including the interest in the '183 patent.  (Opp. at 10.)  But the plain contractual language shows

19   the second December 12, 2008 agreement did not transfer any interest in the '183 patent.

20        As Apple explained in its motion, the definition of the term "Assets" in the second

21   December 12, 2008 agreement is plain and clear.  It refers to "all of the assets and property of

22   Nartron Corporation (the 'Assets') under a certain Assignment Agreement dated Dec 12, 2008"—

23   nothing more and nothing less.  (ECF No. 175-15; Mot. at 11-14.)  UUSI's opposition highlights

24   its improper attempt to rewrite that definition by ignoring words (*e.g.,* "under a certain

25   Assignment Agreement dated Dec 12, 2008") and adding others (*e.g.*, the October 30, 2008 and

26   the November 28, 2008 assignments).  (Opp. at 10.)  UUSI's reading violates black-letter

27   Michigan contract law that neither a party nor a court can rewrite clear and unambiguous

28   language under the guise of "interpretation."  (Mot. at 12.)  *Accord* ECF No. 142-1 at 8-9, 12.

1    Likewise, UUSI has no basis for modifying the definition of "Assets" by replacing the

2    phrase "**under** a certain Assignment Agreement dated Dec 12, 2008" with "**as of** a certain

3    Assignment Agreement dated Dec 12, 2008." (Opp. at 11.) UUSI points to no intrinsic evidence

4    supporting such a change in scope. Nor could it. UUSI also has no response to Apple's argument

5    that UUSI's new interpretation contradicts both its earlier positions and Mr. Rautiola's sworn

6    testimony that the agreement transferred only those assets formerly held by Nartron Corp. "in

7    October through December 2008" (ECF No. 130-1 ¶ 20). (*Compare* Opp. at 2-4, 10-11, *with*

8    Mot. at 17.) Nor does UUSI address Apple's argument that such an interpretation would absurdly

9    sweep in decades of Mr. Rautiola's salary and personal property. (*See* Mot. at 17-18.)

10    Unable to overcome the clear definition of "Assets," UUSI alleges that it "conflicts with

11    the express intent of the contracting parties" and that Apple's position "speculates" as to UUSI's

12    "intent." (Opp. at 11.) Not so. "[A]n unambiguous contract reflects the parties' intent as a

13    matter of law." *In re Smith Trust*, 745 N.W.2d 754, 757-58 (Mich. 2008). The unambiguous

14    definition of "Assets" made the parties' intent clear: the second December 12, 2008 agreement

15    conveyed only the assets under the first December 12, 2008 agreement. UUSI does not dispute

16    that, under Michigan law, a contract's plain and ordinary meaning determines the parties' intent.

17    (*See* Mot. at 13 (citing *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 85-86 (2016)).)

18    UUSI's case law do not help it. *Stark v. Budwarker, Inc.* involved litigation between two

19    parties to the contract, and "there [wa]s no dispute as to what the parties had in mind." 25 Mich.

20    App. 305, 313 (1970). *Dow Chem. Co. & Subsidiaries v. United States* merely held that "parties

21    to a written agreement may act *inter se* in a manner that departs from the terms of the agreement."

22    278 F. Supp. 2d 844, 850 (E.D. Mich. 2003). Neither suggests that parties may rewrite a contract

23    based on non-contemporaneous and self-serving declarations in derogation of the written terms.

24    UUSI's characterization of both cases as reflecting "controlling Michigan law" misleads.

25    Per UUSI, "'[t]he cardinal rule of construction is that we seek to determine and to give effect to

26    the intention of the parties' such that '[i]n the consensual framework that characterizes

27    contractual relationships, *the parties are free to interpret their contract* in a mutually agreed

28    manner.'" (Opp. at 9.) That allegation combines different cases. Although the first quotation is

1  from *Stark* (25 Mich. App. at 313), the second is from *Dow Chem.* (278 F. Supp 2d at 850).

2          UUSI's continued reliance on extrinsic evidence—*i.e.*, Mr. Rautiola's inadmissible and

3  unreliable declaration executed 16 years after the second December 12, 2008 assignment and

4  after the fact discovery cutoff—cannot cure its standing defect.  (*See* Opp. at 11; Mot. at 13.)  Its

5  opposition does nothing to rebut Apple's arguments.  It ignores the law that extrinsic evidence is

6  considered only if the contractual language is ambiguous; it makes no attempt to defend the

7  declaration's admissibility or rehabilitate Mr. Rautiola's credibility; and it disregards the

8  additional extrinsic evidence confirming the unambiguous meaning of "Assets."  (Mot. at 13-14.)

9          Nor does UUSI's assertion that Apple's interpretation would lead to the "nonsensical"

10  result (*i.e.*, the second December 12, 2008 agreement conveyed no assets) justify rewriting the

11  contract.  (*See* Opp. at 11 (replicating argument at ECF No. 155-1, 2).)  UUSI does not dispute

12  that this argument contradicts its earlier position.  (*See* Mot. at 18.)  As Apple has explained (Mot.

13  at 18), the second December 12, 2008 agreement transferring no assets is no more "nonsensical"

14  than UUSI's premise that the first December 12 agreement transferred nothing.

15          Moreover, UUSI's contention that no assets were transferred in the first December 12,

16  2008 agreement contradicts its own statement in the opposition that, "to ensure that all of Nartron

17  Corporation's assets had transferred, on December 12, 2008, *Nartron Corporation again assigned*

18  *to Mr. Rautiola any remaining assets and property as of December 12, 2008* (to the extent

19  Nartron Corporation acquired any new assets between November 28, 2008 and December 12,

20  2008)."  (Opp. at 2 (emphasis added).)  Even if one ignored UUSI's shifting positions and internal

21  inconsistencies in its latest brief, that argument improperly relies on Mr. Rautiola's declaration—

22  which is neither credible nor admissible, as already explained.

23                    c.          **UUSI does not hold Mr. Washeleski or Dr. Cooper's interests.**

24                              (i)      **UUSI's third set of theories fails to show ownership.**

25          As with Mr. Hourmand's interest, Mr. Washeleski and Dr. Cooper's interests end with

26  Mr. Rautiola instead of UUSI.  By October 30, 2008, Nartron Corp. had already assigned them to

27  Mr. Rautiola.  As a result, neither the first November 28, 2008 assignment nor the first December

28  12, 2008 assignment by Nartron Corp. encompassed the '183 patent.  And neither the second

1   November 28, 2008 agreement nor the second December 12, 2008 agreement could have

2   conveyed any '183 interest to UUSI.  (*See* Mot. at 14-16, 18-21.)  In response, UUSI argues that

3   the October 30, 2008 agreement could not have transferred Nartron's interest in the '183 patent to

4   Mr. Rautiola because it did not cover "future rights."  (Opp. at 13.)  UUSI does not dispute that

5   this theory contradicts UUSI's prior briefing and witness testimony.  (*See* Mot. at 19.)

6        Regardless, UUSI again is wrong on the merits.  Mr. Washeleski and Dr. Cooper's

7   interests were not "non-vested" in 1998.  Both interests vested as a matter of law in 1998 when

8   the '183 patent issued.  They then were automatically assigned to Nartron Corp. under their

9   purported employment agreements.  (*See* Mot. at 20.)  The later issuance of the correction of

10  inventorship did not establish a much later date for this vesting, as a correction of inventorship

11  applies retroactively to the patent's issuance date.  *Winbond Elecs. Corp. v. ITC*, 262 F.3d 1363,

12  1373 (Fed. Cir. 2001) (applying correction of inventorship retroactively and enforcing against

13  past infringer).  UUSI cites no authority to support its blanket assertion that both interests were

14  "non-vested."  (*See* Opp. at 12-13.)  UUSI also previously conceded that the correction of

15  inventorship applied retroactively and that both interests vested in 1998.  (ECF No. 130 at 7-8.)

16       Even assuming Mr. Washeleski and Dr. Cooper's interests were "non-vested," the

17  October 30, 2008 agreement transferred to Mr. Rautiola all rights in the '183 patent, whether

18  existing or future.  (*See* Mot. at 20-21.)  UUSI's conclusory argument that the October 30, 2008

19  agreement only transferred Nartron Corp.'s "then-existing interest in the '183 Patent" is belied by

20  the plain contractual language.  (Opp. at 13.)  The agreement explicitly states it "does hereby

21  assign, sell and set over" "the entire right, title, and interest in and to" the '183 patent and to "any

22  inventions disclosed therein."  (ECF No. 175-10.)  As the Federal Circuit has held, such language

23  effectuates a present transfer of future rights.  *See FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d

24  1568, 1570, 1573 (Fed. Cir. 1991) (contract that inventor "agrees to grant and does hereby grant .

25  . . right, title and interest in [any invention]" "did not merely obligate [assignor] to grant future

26  rights, but expressly granted to [assignee] [the assignor's] rights in any future invention.").

27       UUSI's arbitrary attempt to distinguish the October 30, 2008 agreement from the

28  November 28 and December 12, 2008 agreements is unavailing.  (Opp. at 13.)  As Apple

1  explained in its motion, all three agreements contain equally broad terms.  (Mot. at 20-21.)  UUSI

2  offers no rebuttal and identifies no language in the October 30, 2008 agreement that makes it

3  narrower or more limiting than the other two agreements.  (*See* Opp. at 13.)

4  　　　　Nor does UUSI's new argument that the October 30, 2008 agreement "required further

5  action by Nartron Corporation to convey any such future rights" have merit.  (Opp. at 13.)

6  Contrary to UUSI's assertion, the agreement merely requested that Nartron Corp. provide

7  "additional documents, if any, as are necessary or desirable" such as "to secure patent protection

8  throughout all countries" or "further documents evidencing this Assignment, transfer and sale."

9  (ECF No. 175-10.)  The operative language of "does hereby assign, sell and set over" (*id.*) does

10  not require any further action from Nartron Corp. or Mr. Rautiola.  *See Windy City Innovations,*

11  *LLC v. Facebook, Inc.*, 411 F. Supp. 3d 886, 892 (N.D. Cal. 2019), *aff'd*, 835 F. App'x 610 (Fed.

12  Cir. 2021) ("Where a contract expressly grants rights in future inventions, 'no further act [is]

13  required once an invention [comes] into being.'" (quoting *FilmTec*, 939 F.2d at 1573)).

14  　　　　　　　　　　　　**(ii)    UUSI's second set of theories fails to show ownership.**

15  　　　　Recognizing that its third set of theories are untenable, UUSI attempted to revive its

16  second set of theories, *i.e.*, that "both Mr. Washeleski and Dr. Cooper signed April 14, 2010

17  assignments expressly transferring their interests in the '183 Patent to 'Nartron' as the business

18  name of UUSI."[2]  (Opp. at 14.)  That does not help UUSI.  As Apple has explained, UUSI's

19  second set of theories contradicts the agreement's plain language and contemporaneous evidence,

20  which conclusively shows that the April 14, 2010 employment agreements assigned

21  Mr. Washeleski and Dr. Cooper's interests to Nartron Corp., not UUSI.  (*See* Mot. at 15-16.)

22  　　　　UUSI does not dispute that (1) the April 14, 2010 employment agreements expressly

23  assigned rights to "Nartron Corporation" (ECF No. 175-11); (2) Nartron Corp. and UUSI in their

24  inventorship suit against Mr. Hourmand conceded that both Mr. Washeleski and Dr. Cooper

25  assigned their '183 interests to "Nartron Corporation" (ECF No. 175-6 ¶¶ 1, 5); (3) Nartron Corp.

26  and UUSI reiterated in the consent judgment that both named inventors assigned their interests to

27

28  ---
[2] Mr. Rautiola's ownership of Mr. Washeleski and Dr. Cooper's interests via this "second" route
(Mot. at 15.)  does not "conflict" with Apple's argument that Nartron Corp. owns them.  Apple's
position just reflects why Nartron's second and third set of theories are wrong.  (*See* Opp. at 13.)

1   "Nartron Corporation" (ECF No. 175-6 ¶ 7); and (4) Mr. Rautiola represented to the Patent Office

2   that Nartron Corp. was the "assignee of the joint inventors of" the '183 patent" (ECF No. 175-7 ¶

3   1).  (*See* Mot. at 15; *see also* Opp. 14-17.)

4        UUSI's counterarguments do not create a genuine dispute of material fact.  First, UUSI's

5   argument that Nartron Corp. was "dissolved" and "did not exist at the time of April 14

6   assignments" fails.  (Opp. at 14-15.)  As UUSI concedes, Nartron Corp. simply changed "its

7   name to Oldnar Corporation."  (*Id.*)  But the company continued to operate as "Nartron Corp.,"

8   and Mr. Rautiola routinely executed documents using that name.  (*See* Mot. at 15 (citing ECF

9   Nos. 175-6 (executed by Mr. Rautiola on August 26, 2010 on behalf of Nartron Corp.), 175-7

10   (same on August 11, 2011)).)  Nartron Corp. was in fact a *party* in the Hourmand lawsuit in July

11   2010—*after* the April 14, 2010 assignments.  (Mot. at 15.)  This contradicts UUSI's assertion that

12   Nartron Corp. "did not exist at the time of the April 14 assignments."  (Opp. at 14; Mot. at 15.)

13        Second, the self-serving declarations of Mr. Rautiola and Mr. Tuttle cannot show alleged

14   "intent" to assign Mr. Washeleski's and Dr. Cooper's interests to UUSI.  (Opp. at 14, 16.)  Like

15   Mr. Rautiola's declaration (*see* Mot. at 13-14), Mr. Tuttle's declaration is unreliable and

16   inadmissible.  (*See* Mot. at 15-16.)  As with Mr. Rautiola, UUSI ignores that Mr. Tuttle's

17   testimony was equivocal and does not contest Apple's case law disregarding uncorroborated or

18   inadmissible facts.  (*Id.* at 15-16.)  Regardless, UUSI's argument that "[i]t would have made no

19   sense" to assign interests to Nartron Corp. because it was "dissolved" fails because Nartron was

20   still operating under that name.  (*See* Opp. at 15.)  At bottom, the purported "intent" from

21   extrinsic evidence cannot negate the "unambiguous" contractual language, which Michigan courts

22   rely on to determine intent.  *See In re Smith Trust*, 745 N.W.2d at 757-58.

23        Accordingly, UUSI's argument that these declarations show the assignments to "Nartron

24   Corporation" were mere "[a]dministrative mistakes" does not create a material factual dispute.

25   (Opp. at 16.)  And courts recognize "clerical errors" only in cases involving mistaken

26   assignments to similarly named entities that did not exist.  (Mot. at 15.)  That is not the case here.

27        Third, UUSI's claim that the Hourmand lawsuit supports its position is incorrect.  (*See*

28   Opp. at 14.)  The Hourmand lawsuit involved a consent judgment and did not involve any

standing challenge.  (Mot. at 3.)  That the court did not raise it *sua sponte* does not preclude the

existence of a standing issue.  Nor does UUSI's status as the plaintiff in a *different* case involving

inventorship of the '183 patent automatically confer UUSI standing in *this* case.  As noted,

(1) Nartron Corp. also was a plaintiff in that suit, and (2) Nartron and UUSI conceded in that suit

that both Mr. Washeleski and Dr. Cooper assigned their '183 interests to "Nartron Corporation."

UUSI's newfound reliance on the Sanyo patent license agreement fares no better.  (*See*

Opp. at 15 (citing ECF No. 181-5).)  That October 2010 license is even less contemporaneous

than the Hourmand lawsuit (July 20, 2010) or consent judgment (August 2010).  (*See* Mot. at 20.)

Regardless, that agreement at most reflects UUSI's false "self-characterization" as the patent

owner and warrants no weight.  *See Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-358, 2020 WL

7122617, at *7 (N.D. Cal. Dec. 4, 2020) ("[N]either waiver, consent, nor contract can

manufacture standing.").  The April 14, 2010 assignments from Mr. Washeleski and Dr. Cooper

"speak for themselves" and make clear they were to Nartron Corp., not UUSI.  *Id*. at *7 (The

standing "inquiry turns on the facts and the contract terms, not the parties' subjective beliefs.").

Finally, UUSI is wrong that Apple's identification of UUSI as the *purported* patent owner

in its appeal precludes Apple from litigating standing here.  (Opp. at 15-16.)  Apple's

identification merely reflected the recorded owner in the public U.S. Patent Office database, not a

judicial admission.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)

(assertions made in a brief are not judicial admissions).  Regardless, Article III standing "can

never be forfeited or waived."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  UUSI's

argument also would yield an absurd result: a defendant challenging a plaintiff's standing in

district court could not challenge validity before the Patent Trial and Appeal Board.

UUSI's cases are inapposite.  Both concerned judicial admission of facts in the *same*

lawsuit.  *See Ferguson v. Neighborhood Housing Servs. of Cleveland, Inc.*, 780 F.2d 549, 550-51

(6th Cir. 1986) (defendant held to admission in first answer); *Saghian v. Shemuelian*, 835 F.

App'x 351, 352-53 (10th Cir. 2020) (defendants held to admission in answers).  Statements in

other proceedings are not binding judicial admissions.  *See Int'l Tel. & Tel. Corp. v. Gen.

Telephone & Elecs. Corp.*, 518 F.2d 913, 932 n.71 (9th Cir. 1975) (no "binding judicial

admissions" as statements "were made in other proceedings").

### B.    UUSI Lacks Statutory Standing

As UUSI has never held legal title to the '183 patent, it is not a "patentee." (Mot. at 21.) The Court should reject its belated attempt to cure its statutory standing.[3] (Opp. at 17.)  *See Valjakka v. Netflix, Inc.*, 710 F. Supp. 3d 782, 789 (N.D. Cal. 2024) ("'plaintiff must [ ] have legal title to the patent or patent application' before filing suit") (quoting *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072–73 (Fed. Cir. 2020)).

UUSI tries to rely on two new assignments from Mr. Rautiola and Oldnar (previously Nartron Corp.) to cure its standing defect.  (ECF Nos. 181-8, 181-9.)  They do not.  Mr. Rautiola executed these assignments on September 4, 2025.  That is nearly *eight years* after UUSI filed suit, *one year* after fact discovery closed and Apple first raised UUSI's standing defect, *seven weeks* after expert discovery cutoff, and *two weeks* after Apple moved for summary judgment. These assignments therefore are untimely and highly prejudicial and should be stricken.

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235-36 (Fed. Cir. 2019) lends UUSI no aid.  There, the issue was whether the proper party "must be or even can be joined." *Id.* at 1239.  UUSI is not trying to join Mr. Rautiola or Oldnar.  Nor could UUSI join any other party, as it lacks Article III standing and any statutory right.  *See SPH Am., LLC v. Huawei Techs., Co.*, No. 13-cv-2323, 2017 WL 1331920, at *5-6 (S.D. Cal. Apr. 10, 2017) (denying request to join patent owner as plaintiff lacked standing).

## III.    UUSI CANNOT PROVE WILLFUL OR INDIRECT INFRINGEMENT

### A.    No Material Facts Regarding Knowledge of the Patent Exist

UUSI's opposition relies solely on the 2007 communications.  (Opp. at 17-18.)  It does not dispute that the 2007 communications predate the issuance of the reexamined '183 patent. Nor does UUSI dispute that asserted claims 37-39 did not exist at that time.  UUSI's reliance on the alleged knowledge of the pre-reexamination patent fails as a matter of law.  *See MONEC*

---

[3] This does not cure UUSI's Article III standing defect.  *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent in suit.").

1   *Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) (noting plaintiff

2   "cites no authority indicating that actual knowledge of an original patent is equivalent to actual

3   knowledge of a reexamined patent").  UUSI identifies no authority supporting its position that

4   knowledge of the *original* patent is equivalent to knowledge of its *reexamined* version.

5          UUSI's attempt to distinguish *MONEC Holding* is unavailing.  Although Judge Stark

6   found that the existence of "litigation" against defendant's competitors in different cases was

7   insufficient to establish pre-suit knowledge, that was not the sole basis for his decision.  897 F.

8   Supp. 2d at 232.  UUSI ignores that Judge Stark further held that, even "[a]ssuming that MONEC

9   has sufficiently pled Defendants' actual knowledge" of the original patent, "MONEC cites no

10  authority for imposing a duty on Defendants to indefinitely track a particular patent in

11  anticipation of a potential infringement lawsuit."  *Id*. at 233.  As Judge Stark concluded, "[s]uch

12  speculation falls short of a plausible argument for equating knowledge of the [original] patent

13  with actual knowledge of the patent-in-suit, the reexamined [] patent."  *Id.*

14         UUSI tries to distinguish *CAO Lighting, Inc. v. Gen. Elec. Co.* as turning on knowledge of

15  *infringement*, not of the *patent*.  No. 20-cv-681, 2023 WL 387585, at *2 (D. Del. Jan. 25, 2023);

16  *see* Opp. at 19-20.  But as UUSI concedes, indirect and willful infringement require both

17  knowledge of both.  Apple addressed both prongs in the same paragraph.  (*See* Mot. at 22.)  UUSI

18  also argues that unlike *CAO Lighting* where all the original claims were canceled, claim 1 of the

19  '183 patent survived.  (Opp. at 20.)  But that is a non-issue as claim 1 is not asserted.

20         UUSI's attempt to distinguish *Sentius Int'l, LLC v. Microsoft Corp.* as involving a

21  reissued patent is meritless.  78 F. Supp. 3d 967, 975 (N.D. Cal. 2015); *see* Opp. at 20.  Although

22  UUSI emphasizes that "reissue requires surrender of the original patent" (Opp. at 20), it ignores

23  that reexamination similarly "cancel[s]" claims in the original patent.  (*Id*.)  UUSI's suggestion

24  that the reexamined patent is the "same" as the original patent because they have the same patent

25  number is incorrect.  *Cf. Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1364

26  (Fed. Cir. 2012) (intervening rights under 35 U.S.C. 307(b) apply after a reexamination to

27  "amended or new claims that did not exist in the original patent").  The patent asserted here is

28  U.S. Patent No. 5,796,183 **C2**, not the original U.S. Patent No. 5,796,183.

1    *CAO Lighting, Inc. v. Feit Electric Company, Inc*., No. 20-cv-4926, 2020 WL 7786580

2    (C.D. Cal. 2020) ("*Feit*") supports Apple's position, not hurts it.  (*See* Opp. at 20-21.)  The *Feit*

3    court "agree[d] [with the *MONEC* court] that there [wa]s no duty to track a reexamination where

4    there was only a speculative possibility" that the patentee would file suit.  *Id.* at *5.  So too here.

5    UUSI does not dispute that, after Apple "explain[ed] why the iPod dials did not infringe," UUSI

6    ceased all contact as of December 2007.  (Mot. at 21.)  Apple thus had no reason to track (much

7    less a "duty to track") the patent on the speculative chance that it might be reexamined someday.

8    *Feit*, 2020 WL 7786580, at *5.  By contrast, in *Feit*, the defendant was "clearly aware of the

9    reexamination proceedings," as the related case had been stayed pending reexamination.  *Id.*

10            **B.        No Material Facts Regarding Knowledge of Infringement Exist**

11            UUSI likewise does not dispute that Apple did not know and could not have known it was

12    infringing asserted claims that did not yet exist at the time of the 2007 correspondence.  (Opp. at

13    21-22.)  This dooms UUSI's indirect and willful infringement claims.

14            UUSI's speculation that Apple "knew[] or should have known" that it infringed the '183

15    Patent (*id.*) does not raise a genuine dispute of material fact and is legally flawed.  UUSI relies on

16    purported evidence that it provided "detailed claim charts" showing how Apple's "iPod products

17    infringed at least claim 1" of the original '183 patent by 2007.  (Opp. at 21.)  But none of its

18    purported evidence, even taken as true, shows that Apple knew that the accused products

19    infringed the reexamined claims.  *See CAO Lighting*, 2023 WL 387585, at *2.

20            First, UUSI admits that the purported 2007 claim charts concern ***different products***.  The

21    purported claim charts concerned iPod 2, not the accused iPhone or iPad.  Nor does UUSI dispute

22    that those claim charts pointed to iPod's dials, not touchscreens.  (*See* Opp. at 21 (citing ECF No.

23    175-27); *see* Mot. at 21.)  UUSI's attorney argument that iPod 2 has "similar" "touch detection

24    functionality" as iPhone and iPad is insufficient to defeat summary judgment.

25            Second, UUSI admits that the purported 2007 claim charts concern an unasserted claim of

26    the original '183 patent.  (Opp. at 21-22.)  Its argument that "substantial overlap" exists between

27    the asserted claims 37-39 of the reexamined patent and the unasserted claim 1 of the original

28    patent falls short.  UUSI offers no authority that knowledge of infringement of the original patent

1   can be imputed to that of the reexamined patent.  *See CAO Lighting*, 2023 WL 387585, at *2.

2   Nor could it.  Claim 37 of the reexamined patent requires, *e.g.*, a "microcontroller" and a "control

3   signal" be generated when a user touches a "second" terminal after a "first" one, neither of which

4   exists in claim 1 of the original patent.  *Cf. Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1349

5   (Fed. Cir. 1998) (noting "when [plaintiff] added [a] limitation during reexamination, it narrowed

6   the claims, thereby substantively changing their scope").

7   **IV.    CLAIMS 37-39 OF THE '183 PATENT ARE INVALID FOR INDEFINITENESS**

8       **A.    The Term of Degree "Closely Spaced" Is Indefinite**

9       UUSI does not dispute that "closely spaced" is a term of degree.  (Opp. at 22; ECF No.

10  108 at 10 (admitting that "closely spaced" is a term of degree).)  Nor does UUSI dispute Apple's

11  case law that terms of degree must provide "objective boundaries."  (Mot. at 23 (quoting *Interval*

12  *Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).)  Nartron's own authority

13  confirms as much.  *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332,

14  1346 (Fed. Cir. 2018) ("some standard for measuring the term of degree" required).  UUSI's

15  attorney argument that the meaning of "closely spaced" is "clear" or that a jury will understand

16  that it means "spaced closely together" is insufficient to make the term definite.  (Opp. at 22.)

17      UUSI has no response to either of Apple's spot-on cases.  (*See* Mot. at 24-25 (citing

18  *Abdou v. Alphatec Spine, Inc.*, No. 12-cv-1804, 2014 WL 6611422, at *9 (S.D. Cal. Nov. 19,

19  2014) (finding "in proximity" indefinite) and *In re Neurografix ('360) Pat. Litig.*, 201 F. Supp. 3d

20  206, 222, 223 (D. Mass. 2016) (finding "near" indefinite).)

21      UUSI's cases are readily distinguishable.  *Nature Simulation Sys. Inc. v. Autodesk, Inc.*,

22  50 F.4th 1358, 1360 (Fed. Cir. 2022), did not involve a term of degree.  In *Exmark*, the claim and

23  specification provided objective guidelines enabling the skilled artisan to ascertain the scope of

24  "substantially straight."  879 F.3d at 1346 (per specification, "substantially straight" meant

25  sufficiently straight to connect two curved baffle portions).  In *Rosemount, Inc. v. Beckman*

26  *Instruments, Inc.*, 727 F.2d 1540, 1547 (Fed. Cir. 1984), "close proximity" was not indefinite in

27  view of defendant's own use of the term and trial testimony that a POSITA would have

28  understood it.  And in *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821-22 (Fed. Cir.

1    1988), trial testimony showed that, in context, a POSITA would have understood "close to."

2          Unable to rebut Apple's expert Paul Dietz's testimony supporting indefiniteness (Mot. at

3    23-25), UUSI relies on a conclusory statement from expert Darren Cairns.  But *ipse dixit* on the

4    meaning of "closely spaced"—without factual basis—cannot stave off summary judgment.  *See*

5    *Mateo v. M/S KISO*, 805 F. Supp. 761, 775 (N.D. Cal. 1991) ("[E]ven when offered by expert

6    witnesses, conclusory opinions without an identified basis in specific facts cannot prevent

7    summary adjudication."); *Audionics Sys., Inc. v. AAMP of Fla.*, *Inc.*, No. 12-cv-10763, 2015 WL

8    11201243, at *15 (C.D. Cal. Nov. 4, 2015) (rejecting technical expert's conclusory opinion).

9          UUSI ignores that, under its construction, an alleged infringer could not know *a priori*

10   whether a device infringed.  (*See* Opp. at 23; Mot. at 24.)  No amount of experimentation would

11   provide an objective benchmark.  (*Contra* Opp. at 23.)  As Dr. Dietz's unrebutted testimony

12   shows, the probability of crosstalk depends on the type of contaminant surface, whether for

13   example rain water, salt water, or oil.  (*See* Mot. at 24 (citing ECF No. 175-36 ¶ 536).)  Nor does

14   UUSI propose an objective standard that measures whether crosstalk is a problem based on a

15   particular contaminant.  It cannot, as the specification lacks such support.  Thus, whether touch

16   terminals are "closely spaced" lacks an objective standard.  (Mot at 24.)

17         Finally, the Court did not adopt a plain meaning of "closely spaced."  Instead, it

18   tentatively adopted the plain meaning for "a closely spaced array *of input touch terminals*" and

19   deferred indefiniteness "to summary judgment."  (ECF No. 150-1, 18:24-23:3.)

20         **B.      The Claims Are Indefinite Hybrid Apparatus/Method Claims**

21         UUSI is incorrect that "claim 37 does not recite a 'user,' or require a user to take any

22   particular actions."  (Opp. at 24.)  *IPXL* imposes no such requirement.  *See Power Integrations,*

23   *Inc. v. ON Semiconductor Corp.*, No. 16-cv-06371-BLF, 2018 WL 5603631, at *17 (N.D. Cal.

24   Oct. 26, 2018) ("the law is clear that user-action is not the only cause of indefiniteness under

25    IPXL").  The inquiry is just whether the claim recites "both an apparatus and a method of using

26    that apparatus."  *IPXL Holdings, L.L.C. v. Amazon.com*, 430 F.3d 1377, 1384 (Fed Cir. 2005).

27   **V.    CONCLUSION**

28         For the foregoing reasons, the Court should grant Apple's summary judgment motion.

1   Dated:  September 15, 2025          MORRISON & FOERSTER LLP

2

3                                 By:  */s/ Bita Rahebi*
                                        BITA RAHEBI

4

5                                 *Attorneys for Defendant*
                                 APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28